WILLIAM REED *et al*, Appellees, v. ROBERT JUGENHEIMER *et al*, Appellants.

Canvass of Statement of Consent: APPEAL: ERROR OF REFEREE
1   NOT CONSIDERED. An appeal from the rulings of a referee does not lie, and assignments of error based thereon will not be considered.

Same: INTRODUCTION OF POLL BOOKS: On an appeal from the action
2   of a board of supervisors in canvassing the signatures to a statement of consent to sell intoxicating liquor, the case is triable *de novo*, and the poll books, if preserved, are competent evidence, though not introduced until more than eighteen months after their deposit with the county auditor.

*Appeal from Keokuk District Court.*—HON. A. R. DEWEY, Judge.

· SATURDAY, DECEMBER 20, 1902.

APPEAL from an order of the district court holding that certain statements of consent to the sale of intoxicating liquors in Keokuk county were insufficient. Defendants procured and filed the statements with the county auditor, and plaintiffs filed objections thereto.—*Affirmed.*

*D. W. Hamilton, C. H. Mackey* and *Talley & Hamilton* for appellants.

*Brown & Brown* and *Ryan, Ryan & Ryan* for appellees.

DEEMER, J.—The board of supervisors found the state-ments of consent were sufficient, and plaintiffs appealed to the district court, under the provisions of the statute regulating such appeals.  The appeal was taken on the 6th day of December, 1899, and on the 9th day of that month plaintiffs filed additional objections to the state-ments.  Various motions were filed by plaintiffs while the cause was pending in the district court, which need not be further referred to, and on the 8th day of January, 1900, the court referred the case to one Robinson, to de-termine the issues, and report his findings of fact and con-clusions of law in the case separately.  When the case went to the referee, defendants filed a motion to dismiss the appeal and quash the proceedings, for the reason that the poll books at the general election of the year 1898 had ceased to exist, and had become *functus officio*.  The ref-eree overruled the motion, and proceeded with the hear-ing, which resulted in a finding that the statements were insufficient.  Thereupon the defendants moved to set aside the report, and also to refer the case back to the referee with instructions.  Plaintiffs moved to confirm, and for judgment on the findings.  Plaintiffs' motion was sus-tained, and defendants' was overruled; hence this appeal.

While defendants have filed seven assignments of er-ror, it is doubtful if any of them raise any question for our consideration.  None of those relating to alleged er-rors of the referee should be considered, for no appeal can be taken directly from his rulings.  The appeal is from the action of the district court in its rulings on the report, and in rend-ering judgment.  Appellants' argument is not addressed to any of these rulings, and for that reason alone the case should be affirmed.  But, treating appellants' fourth assignment of error, "that the court erred in overruling defendants' and appellants' motion to set aside the report of

1. APPEAL:
errors of ref-
eree not con-
sidered.

the referee and render judgment for defendants herein, notwithstanding said findings and conclusion of said referee,"· as sufficient, the same result must be reached. That motion was based on the following grounds: "That, at the time of the hearing in this cause before referee, there was no competent evidence to sustain such findings; that at that time the poll books of 1898 were supposed to be destroyed, and could not be used in comparing the signatures on the petition of general consent with those upon said poll books, more than eighteen months having elapsed since the day on which the election was held in 1898."

The referee in his report referred to the poll books of the general election of the year 1898, and stated what they showed; and there can be no doubt that he had these 2. SAME: introduction of poll books. books before him. Indeed, appellants do not contend to the contrary. They apparently rely on what they call in their motion "a supposition." In truth the referee had the poll books before him. But appellants contend, and we quote from their argument: "That the election which was the basis of the petition of consent in the case at bar was held in November, 1898; the hearing of this case by the referee was on the 24th day of July, 1900, more than twenty months after the election of 1898; and under section 1145 of the Code, the poll books of the year 1898 were supposed to have been destroyed. Our contention, therefore, is that at the time the referee heard this case there was no competent evidence to determine the sufficiency of the petition of general consent, the poll books at that time having been or supposed to have been destroyed, and were not competent evidence; consequently there was no way by which a trial de novo could be had at that time."

Reliance is placed on *Cameron v. Fellows*, 109 Iowa, 534, and, *Porter v. Butterfield*, 116 Iowa, 725.. Neither of these cases decides the point now before us. In the *Cameron Case* we held, it is true, that it was not the election next preceding

the canvass by the board of supervisors which is to be considered in estimating the percentage of signers, but that, as the statement of consent must be compared with the poll books, the canvass must take place while these books are a part of the records of the county. In referring to section 1145 of the Code we inadvertently stated that the contest therein referred to was an "election contest." In the sense in which the word "contest" was used in that opinion there was no error, but, as we shall see, the word used is "contest." *Porter's Case* simply decides that the poll lists are the only and exclusive evidence as to who voted in the particular localities. Section 1145 of the Code, on which appellants rely, so far as material, reads as follows: "One of the poll books shall be delivered by the judges of election within two days to the county auditor. * * * In each case the receiving officer shall file said books * * * in his office and preserve the same for eighteen months or until the determination of any contest, then pending, after which they shall be destroyed." It will be noticed that the statute used the words "any contest."

Now it appears in the instant case that the board canvassed the statements of consent, and compared them with the poll books, on November 10, 1899. Appeal was taken to the district court, and on the 4th day of December of that year the county auditor filed a transcript of the record of the proceedings of the board with the clerk of the district court. The referee, as we have said, had the poll books of the general election for the year 1898 before him, although he did not hear the case until July 23, 1900. The delay in hearing was due to various motions made by the respective parties. The order of reference, however, was made on January 8, 1900, within the eighteen months referred to in section 1145, *supra*; although the case did not come on for hearing before the referee until after that time had expired. Section 2450 of the Code provides,

among other things, that in cases of appeal from the findings of the board of supervisors the auditor shall certify the statements of consent, and all papers and records, to the district court where the matter shall be tried *de novo.* These records must, of necessity, under the holding in the *Porter Case, supra,* include the poll books, for they are the sole and exclusive evidence as to who voted at the general election, which is made the basis for a finding as to the sufficiency of the statements, and the only evidence on which the district court may act in trying the case *de novo.* As a matter of fact the poll books were not destroyed, but, because of the contest then pending, were preserved as they should have been until the termination of the controversy then pending. When the board of supervisors considered them, as it was compelled to do, in making its canvass, it made them a part of the records in that case and it was the duty of the county auditor, when the appeal was made, to certify them to the district court. But, if not so certified, they could, after being sufficiently identified, have been introduced in evidence before the referee, and neither the referee nor the district court was without jurisdiction to determine the controversy. Jurisdiction is conceded down to the time the books should have been destroyed by the county auditor, which, as we have seen, was not until after the appointment of the referee; and we do not think that jurisdiction was lost by mere lapse of time.

There is another aspect of the case which is fatal to appellants' contention. The case in the district court is to be tried *de novo.* If, for any reason, defendants have lost the evidence whereby they may establish the sufficiency of their statements of consent, it is manifest there is nothing to try on the appeal. The finding of the board of supervisors is not conclusive on the district court. The case is tried before the latter tribunal *de novo,* and the burden is manifestly on the petitioners to show that the

statements of consent are sufficient. We do not care to place the decision on this ground, however. The point is made to show the result of appellants' contention if treated as a correct exposition of the law. What we decide is that in such cases, after an appeal is taken, the poll books, if duly preserved, may be considered, although not introduced until more than eighteen months after their deposit with the county auditor.

The case was correctly determined, and the findings and judgment of the trial court are AFFIRMED.