STATE OF IOWA, Appellant, v. BANNER HOWARD, Appellee.

No. 41114.

MARCH 8, 1932.

John Fletcher, Attorney-general, and Gerald O. Blake, Assistant Attorney-general, for appellant.

Deacon, Sargent, Spangler & Hutchison, for appellee.

KINDIG, J.—On August 14, 1930, the State of Iowa, through its attorney-general, filed a petition in equity in the Linn County district court, asking that the defendant-appellee, Banner Howard, be restrained from practicing medicine and surgery in the State of Iowa, without a license. A motion to dismiss was filed, attacking the petition on various grounds because the allegations therein contained did not set forth a cause of action. This motion raises constitutional questions relating to the validity of Section 2519 of the 1927 Code. That section reads as follows:

"Any person engaging in any business or in the practice of any profession for which a license is required by this title [eight] without such license may be restrained by permanent injunction."

Appellee contends that the foregoing section is unconstitutional for two reasons: First, because it denies the appellee the right to a trial by jury, guaranteed by Article I, Section 9, of the Iowa Constitution; and, second, because it confers equity powers upon the district court not permitted by Section 6, Article 5, of the Iowa Constitution.

Section 2522 of the 1927 Code, contained in the same Chapter as Section 2519, supra, provides:

"Any person violating any provision of this or the following chapters of this title shall be fined not less than one hundred dollars nor more than one thousand dollars or be imprisoned in the county jail for not more than six months, or by both such fine and imprisonment."

Because of this section of the statute, the appellee declares that he is entitled to a jury trial under the constitutional provision relating to trial by jury, which reads: "The right of trial by jury shall remain inviolate." Furthermore, as just explained, it is claimed by appellee that the legislature had no constitutional power to enact Section 2519, supra, because thereby it conferred equity powers upon the district court not possessed by chancery courts "at the time of the adoption of the Constitution." The constitutional provision here involved is Section 6 of Article 5, which reads:

"The District Court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."

In addition to the foregoing, it is asserted by appellee that the state's petition is fatally defective because the same does not allege or show that the appellee would continue the illegal practice of medicine unless restricted. By filing his motion to dismiss, the appellee admits that he has been practicing medicine without a license in the manner and way set forth in the peti-

tion. Consequently, consideration will now be given to the matters above mentioned in the following order.

■ I. On the question relating to the insufficiency of the state's petition, the appellee cannot prevail for the reason that a similar proposition was determined against his contention in State v. Fray, 214 Iowa 53. There it is said:

"The plaintiff (the State) is entitled to the injunction upon a showing of the existing practice; and this is so even though the defendant should suddenly desist, and should profess repentance and a purpose to desist for the future."

Further discussion of the proposition is not necessary in view of our previous opinion in the Fray case.

■ II. Consideration will now be directed to appellee's contention that Section 2519, above quoted, is unconstitutional because in contravention of Section 9, Article I, of the Iowa Constitution.

This argument, as the one discussed in the division immediately above, is decided adversely to appellee's claim in State v. Fray, supra. During the discussion in the Fray case, we approved the following quotation from Board of Medical Examiners v. Blair, 196 Pac. 221 (Utah):

"It may be conceded that the power to enjoin the threatened commission of ordinary crimes has never been recognized by the courts. But we are here dealing with the right or power of the legislature to enact and to provide means for the enforcement of regulations looking to the health of the community. If no other or worse results would or could follow the violation of the penal provisions of a statute than the arrest and punishment of any one violating such provisions, it might well be that the legislature would not have the authority to provide a remedy by injunction. As indicated, the statute was enacted, not to provide a means of punishing those violating its provisions, but to protect the community from what, in the judgment of the legislature, was or might be detrimental to the public health. The power of the court, while not often called into force, to prevent such an injury, has been repeatedly recognized in the decisions of the courts of this country."

In view of the fact that appellee's argument now under consideration was entirely repudiated in State v. Fray, supra, further discussion can be of no use to either the courts or the legal profession of this state.

 III. The question relating to appellee's claim that Section 2519 is repugnant to Section 6, Article 5, of the Iowa Constitution, still remains for discussion.

At the outset, appellee argues here that this provision of the Constitution prevents the legislature of Iowa from conferring on the district court equity jurisdiction not possessed by chancery courts at the time the Constitution was adopted. It is said in Lessenich v. Sellers, 119 Iowa 314, reading on page 317:

"The jurisdiction * * * conferred (by section 4, Article 5 of the Iowa Constitution, an associate section of section 6, supra) in equity suits is that possessed by chancery courts at the time of the adoption of the constitution * * *."

See also Sherwood v. Sherwood, 44 Iowa 192; Howe Machine Co. v. Woolly, 50 Iowa 549. Following this thought, the appellee concludes that the legislature of this state recognized such constitutional limitation upon its power to confer equity jurisdiction on the district court, when enacting Section 10941 of the 1927 Code. That section provides:

"The plaintiff may prosecute his action by equitable proceedings in all cases where courts of equity, before the adoption of this code, had jurisdiction, and must so proceed in all cases where such jurisdiction was exclusive."

Appellee at this point urges that Littleton v. Fritz, 65 Iowa 488, has a bearing upon this general proposition. Therefore, it is contended by the appellee that, because of the cases above cited and reasons there given, the state in the case at bar had no constitutional power to enact Section 2519 supra. At common law, appellee maintains, the practice of medicine without a license did not constitute a nuisance. So, he asserts that equity would not have jurisdiction to restrain him from practicing medicine without a license except for Section 2519, above named. But appellee continues by saying that the legislature did not have the constitutional power to enact that legislation, because when the Iowa Constitution was adopted equity did not possess

the power to restrain the practice of medicine without a license unless the act constituted a nuisance. In support of this contention, appellee cites State v. Maltby (Nebr.); 188 N. W. 175; People v. Universal Chiropractors' Association, 134 N. E. 4 (Ill.); State v. Ehrlick, 64 S. E. 935 (W. Va.); State ex rel. Stewart v. District Court, 251 Pac. 137 (Mont.); Dean v. State of Georgia, 106 S. E. 792 (Ga.).

By way of illustration, the appellee supports his argument by calling attention to the fact that the legislature of Iowa, in order to sustain an injunction in the following instances, has declared the acts to be nuisances. Reference is made to the control by injunction of intoxicating liquors, cigarettes, narcotic drugs, and houses of prostitution. Regardless of what may be the limitations placed upon the state legislature by Section 6, Article 5, of the state Constitution, if the act attempted to be controlled constitutes a nuisance, the same may be enjoined. It is conceded by appellee that equity had jurisdiction of nuisances at common law. See Littleton v. Fritz (65 Iowa 488), supra. There it is plainly demonstrated that equity may enjoin a nuisance notwithstanding Section 6, Article 5, of the Iowa Constitution. Such is true because, according to the theory of the Littleton case, at the time the Iowa Constitution was adopted, equity had the power to enjoin nuisances.

Without doubt, under all the authorities dealing with the subject matter, the legislature may provide for an injunction restraining the commission of an act which constitutes a nuisance. That much is conceded by appellee. Under the theory announced by this court in State v. Fray, supra, the practice of medicine without a license is in fact a nuisance. Section 12395 of the 1927 Code provides: "Whatever is injurious to health * * * is a nuisance * * *." Appellee argues that the practice of medicine without a license is not *per se* a nuisance, because a doctor may be skilled and efficient although he has no license. This theory, however, is overcome by Section 12395, above cited, when applied to the doctrine announced in State v. Fray, supra, and Board of Medical Examiners v. Blair (196 Pac. 221, Utah), supra, cited and approved in the Fray case. During the discussion in Board of Medical Examiners v. Blair, supra, the Utah Supreme Court said, in reference to this matter:

"But we are here dealing with the right or power of the legislature to enact and to provide means for the enforcement of regulations looking to the health of the community."

While it may be true, as appellee says, that an individual doctor without a license may be skilled, yet experience has taught mankind that generally men without licenses are not skilled. If they were skilled they would obtain the required license. It is obviously injurious to the public health to have men unskilled in medicine and surgery practice upon the human system. Death, insanity, great bodily injury, or the spread of epidemics may result from the care of a patient by a physician who is unskilled. The very purpose and object of the law under consideration is to promote the public health and protect the public generally, as well as the individual, from the dangers surrounding the practice of medicine by a man who is not licensed so to do. Thereby it is part of the public policy of this state, as declared by the chapter under consideration, that the practice of medicine without a license is injurious to the public health. Of course, it is true that death must come to all men. A skilled physician, however, may prolong life during the period intended by nature. Such physician also may detect an epidemic and prevent its spread, while an unskilled doctor may be unable to accomplish that result and untimely death and disaster may follow his treatment. Experience teaches that the doctors and physicians who fail to obtain licenses are generally unskilled, and therefore dangerous to the public health; while those with licenses have undergone a course of study which tends at least to fit them for the practice of medicine and surgery upon a human being. See the dissenting opinion in State v. Maltby (188 N. W. 175, Nebr.), supra, reading on pages 178 and 179.

Consequently, under the rule adopted by this court, as expressed in the Fray case, supra, and the public policy declared by the legislature through the acts in question, the practice of medicine without a license is injurious to the health of all the people, and therefore, under the general statute defining nuisances, constitutes and is a nuisance. When the public health is under the care of unskilled doctors there is constant danger. Hence, the legislature had authority under the Constitution to enact Section 2519, before quoted. Such is true, even under appellee's theory, because, when the Constitution was adopted,

as before explained, equity could enjoin a nuisance. Manifestly, then, the legislative act in question is not unconstitutional. By so concluding, we in no way place limitations upon, or in any way restrict the power of, the legislature to enact laws under Section 6, Article 5, of the Iowa Constitution. Whatever limitations or restrictions may be placed upon the legislature by that provision of the Constitution, they are left entirely open questions by this opinion.

Wherefore, the judgment and decree of the district court holding that the appellant's petition does not contain the basis for a cause of action must be, and hereby is, reversed, and the cause remanded.—Reversed and remanded.

WAGNER, C. J., and EVANS, DE GRAFF, FAVILLE, and MORLING, JJ., concur.

GRIMM, J., specially concurring.

GRIMM, J., (Special Concurrence)—Only because of the opinion in State v. Fray, to which I dissented, I concur in this opinion.